IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-01761-WDM

KATHERINE ZAMORA,

      Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Miller, J.

      Plaintiff Katherine Zamora (Zamora) appeals the denial of her application for disability insurance benefits by defendant Jo Anne B. Barnhart, Commissioner of Social Security (Commissioner).  I have considered the parties' written and oral arguments, as well as the evidence contained in the certified administrative record.  For the reasons that follow, I conclude this case should be remanded to the Commissioner.

<u>Background</u>

      Zamora was born January 1, 1950.  Administrative Record, at 29.  She has a high school diploma.  *Id.* at 289.  Her past relevant work includes jobs as an appointment clerk, assembler, and product inspector.  *Id.* at 12.  She alleges she became disabled in April 2003 due to osteoarthritis, carpal tunnel syndrome, fibromyalgia, trigger fingers, and diabetes.  *Id.*

      In connection with a workers' compensation claim in 1996, Zamora was treated

by Dr. Mark Frank.  Dr. Frank found Zamora was permanently restricted to sitting and standing for a maximum of one-half hours and to walking a maximum of one hundred feet.  *Id.* at 117.  These restrictions were renewed in 2003.  *Id.* at 118.  A state non-examining physician who assessed Zamora's residual functional capacity in connection with the current application, however, found Zamora could stand, walk, and sit with normal breaks for about six hours in an eight-hour work day, she could lift twenty pounds occasionally and ten pounds frequently, she had several manipulative limitations (handling, fingering, etc.), and she should avoid concentrated exposure to extreme cold.  *Id.* at 100, 103, 104.

Zamora's application was denied initially, and she requested a hearing before an ALJ.  *Id.* at 25, 86.  At the hearing, held August 5, 2004, she was represented by an attorney.  A Vocational Expert (VE) also testified at the hearing.

The ALJ gave the following hypothetical to the VE:

> I would like you to assume there's an individual who could occasionally lift 20 pounds, frequently lift 10 pounds.  The person could only occasionally handle and finger.  The person would require occupations where there's no concentrated exposure to extremes in cold.

*Id.* at 311.  The VE responded that the hypothetical claimant could not perform Zamora's past relevant work.  When the ALJ asked the VE whether the claimant, with the age, education, and work experience of Zamora, could perform light work, the VE stated that there were some unskilled light jobs that would meet the criteria, including jobs as a school bus monitor, children's attendant, ticket taker and usher, page, and furniture rental consultant.  *Id.* at 311-313.  The VE adjusted his assessment of the

Case 1:05-cv-01761-WDM   Document 14   Filed 09/26/06   USDC Colorado   Page 3 of 10

numbers of jobs available for full-time, as opposed to part-time, positions. As discussed below, this testimony is unclear and the resulting number of jobs uncertain.

The ALJ issued a decision on September 19, 2004, applying the standard five-step analysis. *Id.* at 12-20. He made the following findings:

1. Zamora had not engaged in any substantial gainful activity since the alleged onset of disability.

2. Zamora had severe impairments, including "left wrist enthesopathy, degenerative joint disease, cervical uncovertebral hypertrophy, diabetes mellitus type II, fibromyalgia, and obesity."

3. The impairments did not meet or medically equal a listed impairment.

4. Zamora had the residual functional capacity to perform work activities, but restricted to lifting and carrying twenty pounds occasionally and ten pounds frequently; occasionally handling and fingering; and avoiding concentrated exposure to extreme cold.

5. Zamora could not perform her past relevant work.

6. Zamora had the residual functional capacity to perform a significant range of light work.

7. Although she could not perform the full range of light work, using the Medical-Vocational Rule 202.14 as a guide, there were significant numbers of jobs in the national economy that she could perform, including jobs identified by the VE as school bus monitor, child attendant, usher, page, and furniture rental consultant.

8. Zamora was not disabled as defined in the Social Security Act.

*Id.* at 19-20.

The Appeals Council denied Zamora's request for review, rendering the ALJ's determination of not disabled final for purposes of this appeal. *Id.* at 4.

## Standard of Review

I review the Commissioner's decision to determine whether her factual findings are supported by substantial evidence in the record as a whole and whether she applied the correct legal standards. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is '"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'" *Id.* (citations omitted). The failure to apply correct legal standards or to provide an adequate basis from which I may determine that the appropriate legal principles were followed is grounds for reversal. *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993) (citation omitted).

## Discussion

On appeal, Zamora raises the following arguments: (1) the ALJ relied on the wrong Medical-Vocational rule based on her age; (2) the ALJ's residual functional capacity findings failed to consider her significant limitations on standing and walking; (3) the ALJ improperly evaluated her fibromyalgia, pain, obesity, and credibility; (4) the ALJ violated the treating physician rule; and (5) the VE's testimony did not support a finding of a significant number of jobs in Colorado. I address these arguments in turn.

1. Vocational Rule

Zamora asserts that the ALJ improperly applied Rule 202.14 of 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1 (the "grids) and should instead have applied Rule 202.06, applying to individuals of advanced age (55). At the time of the hearing before the ALJ, she was four months shy of her 55th birthday. Under Rule 202.06, it is

4

possible she would be entitled to benefits (although in her reply brief she concedes that

remand is necessary to address transferability of skills issues).  Zamora argues that, in

borderline cases such as hers, application of the vocational rules should not be

mechanical.  20 C.F.R. § 404.1563(b).  She relies on *Daniels v. Apfel*, 154 F.3d 1129

(10th Cir. 1998), a case in which the Tenth Circuit held that, where a claimant is on the

borderline of an age group, the ALJ should look to when the insured status expires.[1]

In *Daniels*, the Tenth Circuit stated:

> To sum up, a borderline situation exists under § 404.1563(a) when a
> claimant's age is within a few days or months of the next higher age
> category.  When a claimant falls within a borderline, § 404.1563(a)
> prohibits the Commissioner from mechanically applying the age
> categories in relying on the grids to determine whether a claimant is
> disabled.

*Id*. at 1136.

The Commissioner responds that *Daniels* is distinguishable because the ALJ in

that case did not use a VE but relied exclusively on the grids.  The Commissioner also

states that the ALJ considered "the overall impact of all factors," but it is not clear what

this means.[2]

In reply, Zamora presents the case of *Cox v. Apfel*, No. 98-7039 (10th Cir.

December 14, 1998) (1998 WL 864118), an unpublished case following *Daniels* in

which the ALJ consulted a VE but ultimately relied conclusively on the grids.  *Cox* did

---

[1]     Zamora's insured status expires December 31, 2007.

[2]     The Commissioner's brief in this case is troubling.  It frequently fails to
address Zamora's specific arguments and relies on generalizations that do not aid in
the resolution of the appeal.

5

not indicate that its reliance on *Daniels* was permissible because of the ALJ's reliance on the grids rather than the VE's testimony.

In this case, the ALJ called the VE to testify.  In his written decision, on the ultimate issue of disability, the ALJ stated he was "using Medical-Vocational Rule 202.14 as a framework for decision-making."  Record, at 20.  He then went on the find there were jobs available to Zamora, identifying work listed by the VE.  *Id.*  Although the ALJ did not clearly rely exclusively on the grids, he never considered whether Zamora fell within a borderline situation and, if so, what impact that had on his decision.

I conclude the ALJ erred in applying a mechanical approach to the grids and in not considering Zamora's borderline age.

2.    Residual Functional Capacity Finding

Zamora next asserts the ALJ's residual functional capacity finding that she could perform light work failed to consider her limitations on walking and standing.  She points out that light work, as defined in the regulations, generally requires significant standing or walking (or, if seated, requires use of hand or foot controls).  20 C.F.R. § 404.1567.

Zamora cites medical evidence in the record supporting her claimed limitations, including an X-ray from June 2004 in which the results showed "Moderate-to-severe osteoarthritic degenerative changes" present at the left knee.  Record, at 159.  In addition, in 1996 (before the alleged onset date), her workers' compensation physician, Dr. Mark Frank, limited her to walking only 100 feet and to standing for one-half hour.  *Id.* at 117.  As observed above, these restrictions were renewed in 2003.  *Id.* at 118.

Zamora also asserts the ALJ failed to adjust his residual functional capacity findings on the basis of her fibromyalgia and obesity and her complaint of pain, despite his accepting the former conditions as severe impairments.  She argues the ALJ did not consider the fibromyalgia when he disregarded her complaints of pain as not fully credible and that he failed to give at least some weight to the subjective evidence of pain as required by *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).

Defendant points out that the ALJ acknowledged the medical evidence referred to but found it did not support Zamora's claimed limitations.  She also argues there were other exams that were normal and that the state agency physician found Zamora capable of performing light work.  With regard to the arguments on fibromyalgia and obesity, the Commissioner's response is very general.  After pointing out that the ALJ found fibromyalgia and obesity to be severe impairments, she states that the ALJ indicated he had "considered the entire record" and, thus, the ALJ must have considered the effects of these impairments on Zamora's residual functional capacity.

The Commissioner is correct that the ALJ noted that Dr. Frank's opinion was from 1996, but the ALJ never acknowledged the renewal of Dr. Frank's restrictions.  *Id.* at 17.  With relation to the knee impairment, he noted that it did not meet a listing because it did not result in the inability to ambulate effectively.  *Id.*  The ALJ did not, however, address whether there were any limitations to Zamora's ability to stand or walk, and did not include any such limitations in his residual functional capacity finding.

With regard to the fibromyalgia and obesity issue, I do not see anything, other than the ALJ's general inclusion of all the evidence in his review, to indicate that he

7

considered the fibromyalgia diagnosis (or her obesity) when he discounted Zamora's claims of pain and postural limitations.

Viewing the record as a whole, I conclude the ALJ's residual functional capacity finding is not supported by substantial evidence given his failure to address the 2003 renewed restrictions, to explain why he did not include or consider standing and walking restrictions in that finding, and to explain his treatment of the impact of fibromyalgia and obesity on Zamora's claimed limitations.

3.    Treating Physician Rule

Zamora asserts the ALJ improperly disregarded the opinion of Dr. Frank, in 1996, that she had permanent restrictions on walking, standing, sitting, and using foot controls.  Record, at 117.  She discounts the ALJ's stated reasons for rejecting this evidence as too old by pointing out that the restrictions were "permanent" and were renewed in 2003.  *Id.* at 118.  The lack of supporting documentation is apparently due to a problem with obtaining the records.  Zamora argues the ALJ had the duty to develop the record on this point and obtain the information cited in an Adjudication Officer's summary (Record at 277-279).[3]  Zamora also disagrees with the ALJ that the restrictions were inconsistent with her activities of daily living, and she asserts that the ALJ should not have relied on the non-examining state physician's opinion over that of a treating physician.

The Commissioner responds that Zamora worked after Dr. Frank imposed the

---

[3]    The Commissioner's response to this issue is to state that the ALJ had no duty to develop the record as to a previous application for disability.  This fails to address the renewal of the restrictions in 2003.

restrictions in 1996.  (Zamora replies that she left Samsonite in 1996 and moved to a

different job with different activities.)  She contends that the ALJ properly addressed the

weight to be given Dr. Frank's opinion and the reasons for discounting it.

The factors set forth in *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.

2003), concerning deference and weight given medical opinions include:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Id.* at 1301 (quotation omitted).

The ALJ addressed a few of these factors, but not all of them.  In addition, as

discussed above, he did not acknowledge that the restrictions were renewed in 2003.

On remand, these omissions should be corrected.

4.    Number of Jobs

The parties disagree on their interpretation of the VE's testimony, at 311-315 of

the record, concerning the number of jobs available to Zamora in Colorado.  Zamora

calculates the total number as 535, a number that would not be significant under

*Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992) (accepting an ALJ's determination

that 650-900 jobs was a significant number based on analysis of facts).  The

Commissioner reads the VE's testimony to provide 702 jobs in Colorado, a number that

would satisfy *Trimiar*.  Neither party addresses the fact that the Tenth Circuit was

reluctant to rely on specific numbers for a finding of significance but instead looked to the ALJ's consideration of other factors, including the level of disability, the reliability of the VE's testimony, the distance the claimant is able to travel to engage in the work, the isolated nature of the jobs, and the types and availability of the work.  966 F.2d at 1330-1332.

The VE's testimony regarding his intended reductions is not clear, and the ALJ did not address the issue of whether the numbers were significant or the *Trimiar* factors in his decision.  Given these omissions, I cannot find that his determination that jobs in significant numbers were available to Zamora is supported by substantial evidence.

<u>Conclusion</u>

For the reasons discussed above, I find that the Commissioner's determination that Zamora is not disabled is not supported by substantial evidence in the record as a whole and is not based on correct legal standards.  Accordingly, this case is remanded to the Commissioner for further proceedings consistent with this order.

DATED at Denver, Colorado, on September 26, 2006.

BY THE COURT:


s/ Walker D. Miller
United States District Judge